This is Toscaniavna Romatchinova versus Ashcroft. Is anyone here for the government? We've skipped over one that's going to be done by telephone later. Is it you, Mr. Romatchinova? Yeah. I have a suggestion. I'm sorry. The way around is William D. Evans, appearing for petitioner. This matter was briefed by another attorney who shares office space with me. He's been out of the country, and I haven't had a chance to talk to him about the case, although I did happen to be the one who handled the matter before the immigration judge. And I noticed that I don't find any reply brief that was filed to the government's brief. I think it seems to me that the opening brief we had establishes a reasonable fear of persecution in Kazakhstan. This is a Jewish woman who goes to a section of the cemetery where she lives, which is a Jewish section, and gets beat up by three people with swastikas on them. Three women. Three women, yes. That's right. But beaten up pretty severely. And then her son is beaten up thereafter, apparently because his address book was recovered by the same people. And when she goes to the police, this is in about May of 1998, the police indicate that she shouldn't be out so late, and they can't be investigating all these matters. They do nothing. Then later that year, she goes to an agricultural convention of some kind in Kazakhstan, and she's a government economist, and makes a statement kind of off the record that people like her or the Jewish people over there are not protected. And then she writes a two-page letter to the Senate, which she expresses her concern about not being able to be protected against the forms of persecution over there. And then she's taken into, she's arrested, held for three days. Then she comes over here. It seems to me that would raise a reasonable fear of persecution. On the other hand, the hearing the judge held made a number of credibility resolutions against her. It seems to me that these haven't been addressed in any reply brief, like I think I'll address them for you now. One of the one of the holdings was that this letter to the Senate, he finds it incredible, I guess, that she would a two page letter like this of such magnitude and importance. She would not have a copy. And she doesn't. She didn't keep a copy, but she pretty much repeated what she said in this letter. It seems to me that the letter wrote the letter at home and it was handwritten. I'm sorry. She said she wrote the letter at home. It was handwritten. It was it was a two pages of handwritten, handwritten comments. And so I guess you felt that I suppose you could say that. Yeah, I would. If I was writing the letter, I would certainly want to keep a copy. On the other hand, she at this time, she was acting under much stress. And the IJ felt that this was a it made the whole thing incredible, like the letter never existed. And yet she does talk about having sent the letter. It doesn't seem like that is a proper basis to hold against her. Now, the other the other main part of the credibility, credibility resolution is when she's talking about the police action taken against her before she went to the conference that she put some statement in the mouths of the police. I guess she that the policeman may not have said this in so many words, but this is the impression that she got that she's not protected over there. It seems to me that just accepting for what what she did say that they warned her about how you should be careful about going out. It's so late in the day and getting dark. You should be careful where you go. I suspect that advice would be given by police in many American cities. That's true. Is that exceptional? No. But on the other hand, police, when you go to a police station and you complain about something, then they will certainly take your statement down. Find out what the witnesses, what witnesses you have. Find out what the description of the people who were who did this to you. And they didn't do that. So what else could she conclude? I don't think this is a proper basis either to make a major credibility resolution against her whole story. Unless you have any other questions, Your Honors, I'll defer on any rebuttal. Let me ask a question similar to one asked by Judge Reinhart in the previous argument, which is to make certain we understand the scope of the decision here. It's a little ambiguous to me, but I take it that it's primarily an adverse credibility determination. So my question to you, there is a question here. If we conclude, as you have argued, that the credibility determination cannot be sustained, what's the appropriate action on our part? That was taken up in this last case, I believe. And I'm not actually certain because they never there was never any finding made that these facts that she testified to would make out a reasonable fear of persecution. Although I think it would, but I'm not certain on the posture of this case. So that suggests, perhaps, if it is the determination that the petition for review should be granted, that it should be sent back for the agency to accept credibility as established, and then they visit the issues that have been touched upon in the IG's decision, but not clearly rule of law. I would agree. I think that's something that they should take up on remand. Thank you. Thank you, counsel. May it please the Court, my name is Earl Wilson on behalf of the government. Perhaps I should answer the question that Judge Clifton asked first. As I read the opinion, Your Honor, I think the court, the immigration court looked at really three allegations that formed the basis of the petitioner's claim. As to the first two, the court simply found that there wasn't enough evidence there to demonstrate that the attacks were on account of her being Jewish. But I think that the credit, what the court found incredible was her allegation concerning when she was, she allegedly made these statements about her employer, then was detained and allegedly was threatened. And this did not appear in her asylum application. Allegedly was threatened by saying that if you don't sign this document, we're going to, we're going to send you to a mental institution and we're going to detain you. And the court noted that she never signed the papers, she wasn't detained, she wasn't sent to a mental institution, she was sent back to her job, she was in fact given time off. And the court found it not very credible to assert on one hand that this threat existed against her, and on the other hand, she did not comply with the threat and nothing ever happened. It just seemed a bit incongruous that this actually happened. So I think the court looked at that specific incident and found that claim not to be credible. I think if you look at the decision, the court does make a finding that Petitioner did not meet her burden of showing that on page, the record of 42, I conclude based on the testimony that the respondent has presented to me and investigation of the documentation that she has presented to me, that she has not presented credible testimony or sufficient evidence in support of a claim of past persecution or well-founded fear of future persecution in Kazakhstan for purposes of asylum. So I think the court actually does say that whatever she has presented here is insufficient and with respect to that last claim, just simply not credible. So I think what the court has for it here is to look at whether the evidence in this case compels a finding that when she went to the cemetery and was allegedly attacked by three or four young girls, as she testified, or when her son was allegedly attacked subsequently, whether those incidents rises to the level of past persecution on account of a political or because she was a Jew. Especially in light of the fact that she worked for a governmental agency, she rose to fairly significant levels, had very substantial responsibility as an engineer, was sent to represent the government at a conference, was a spokesman for the conference, and notwithstanding the fact that she was a Jew and still had all of these responsibilities, whether the evidence compels a finding that after she speaks outside of the scope of her employment, that one can reasonably conclude that whatever happened to her was on account of her being a Jew. I think the record simply does not compel such a finding. And I think that's what the immigration judge found in this case. As I said, I think that that's essentially the case. It's really not a very complicated set of factual bases, and with respect to the judge's finding, I think it's fairly direct. The two incidents simply don't demonstrate that whatever harm was on account of her being a Jew  and the third incident seemed incredible. And I would ask the court to find the petitioner simply not provided enough information to compel this court that the immigration judge's finding was incorrect. Now, you say the attack at a mother's grave was not credible or it wasn't sufficient? I think that was a case where it wasn't sufficient to demonstrate that it was on account of her being a Jew. It wasn't a context where that would be a very compelling inference? Well, I mean, that's one of the inferences. Well, one of them, but doesn't it just cry out? With respect to that, I don't think so. Why? What other reason would there have been? Well, you asked me whether it cried out. I just think that it could very well be a random attack. I mean, that's part of the environment that they were living in there. And as I said, to put that in context again. You know, you found somebody in a church praying and three people came in and beat her up. You'd say, well, they could have been, and they don't rob her, they just beat her up. Well, they could have just wandered in from the street. But the natural and compelling inferences, they beat her up because she's praying in the church. In this case, she's praying in a Jewish grave. Again, Your Honor, I don't think so. But the other point that you... Well, why don't you? Well, you asked me whether... I know you disagree with me, but... I just don't think that that's a compelled conclusion. I certainly agree that one can make that argument, but I just don't think that... And you can't really suggest an alternative, can you? And if they blew up a black church in the South during the civil rights period and bombed the church and a lot of the little girls were killed in the church, there's no reason to believe that had anything to do with race, was there? Your Honor, that's a... Sure. Well, Your Honor, you have to look at the facts of the case. And I certainly am acutely aware of the issues of racism. But there may be other reasons. I'm not suggesting to you that... There may be more. Your Honor, I'm just saying to you, there may be... One of the reasons clearly is that you suggest. And I'm not meaning to minimize that. I'm not suggesting to you that that's not a reason. But there may be reasons when, if you look at the facts and circumstances, that it's not a compelling conclusion. But I don't want to get bogged down on that. The other point I want to make, Your Honor, is that... You're stuck on it, I think. You're bogged down and stuck by going on to something else. The other point that the immigration judge pointed out is that, assuming that these were three young girls, there's no indication that these individuals were persons whom the government was unwilling or couldn't control. There was no... Well, that comes down to her testimony on what the police said to her. As I understand her testimony, she said there wasn't anything they could do about these kinds of incidents if they didn't have enough police to deal with them. Your Honor, when... After the first incident happened, it's undisputed that she never reported that incident when it happened initially at the gravesite. When the second incident happened, she did report it. They took a... It's undisputed. They accepted the report. And it's not as though they said, you know, go away, I can't deal with you. They took the report and they gave her some advice, as Judge Clifton mentioned, that says, you know, but there's no indication that they were totally callous about the allegations that she made at all. In fact, as I said, you know, that just isn't the case based on this record here. I would point out that the individuals who she alleged, she never... After the first incident, she never raised that issue to the police. Subsequently, when she did, the police took the report. They gave her some advice. As Judge Clift, the type of advice that one would probably get in this country here. But the advice... Well, I would say, if you got that advice in this country, you would say that was a brush off. No. Yes, it is. Your Honor, I can speak from personal experience, which is not relevant here, but, you know, that sometimes happens depending on the details of what you present to the authorities. And I just don't think that that's a compelled... Well, I can speak from personal experience, too. That's a banal response. Yeah, well, look hot when you're out there the next time. It's not helpful at all. Again, Your Honor... Maybe you'll suffer that, maybe. I just don't think that there's evidence in this record that compels the finding that after she was attacked and doesn't report it, and she gets... Her son gets attacked a second time. She reports it. The government takes the report. They give... The police take the report. They give her the advice. When you consider all of that in light of the fact that it's the very government that's employed this lady for 20-something years, she has risen to a very high level within the government, these are the types of facts that I'm responding to that puts this particular case in context. She is at a high level. After these incidents, the very government sends her to represent the government. And what you have here is continually increasing responsibility. It's not the treatment of somebody who is being attacked because they're Jewish. The state report also indicates that the government is credibly making an effort to reduce incidents of attacks against... Her testimony is that she went to the police station. Her son was attacked three more times between May and November. Each time she went to the police station, there wasn't any effort on their part to protect us. She went to the same police station, saw the same people. They said each time their reaction was the same. And what was it? That they were really tired of me. Oh, it's just you again. Just get lost. It was the third or fourth time that she went there. And they said they couldn't do anything about it. Well, that sounds like the government was unable to protect her. But all we're talking about at this point is... Well, you're talking about more. You're talking about not only the credibility, but whether it makes out a case to say that she and her son were on at least four or maybe five occasions were assaulted for being Jewish and they went to them and the police said there's nothing we can do about it. Well, I think that the record says on page 97 at the bottom, Your Honor, just read in its totality, it says, well, what did they say to you, if anything? Well, they accepted my complaint. Firstly, they just mentioned that you should be more careful showing up out of doors, outside later in the day when it's getting dark. Then there was something else. I don't remember for sure, but what I do remember is that the attitude, well, the attitude was sort of with contempt. If you don't like it, then just leave. That's her perception. If you don't like it here, then just leave. No one said that to her, Your Honor. I mean, the record doesn't say that that's what they said. It reminds me of what they said to me in college when I asked why there were no black students there. And they said, if you don't like our admissions policy, just leave and transfer. What they said to her was, if you don't like it here, which I assume means in this country, just leave. Your Honor, that's not the testimony. What does it mean if you don't like it at the police station? Just leave. Your Honor, the record doesn't say that anyone at the police station said, I agree if they said that to her, perhaps she has a case. What she's recounting here is what she perceived to be their attitude. And to make this case because she said that Well, she next says, well, they also mentioned I wasn't the first one with a complaint like that. But they don't, because they don't have the force of capability to react to each case when things like that happen. Things like what? When every, I would presume every attack that happens against Jews. Your Honor, that doesn't, that's, but anyway. All I'm suggesting, Your Honor, is that the point that the reference that the Court just read about just leaving is one, her perception, two, is at odds with the record that indicates where the government is on record as fostering greater understanding of other nationalities. This is not a case where you have this organized anti-Semitic case here. To be sure, there are probably attacks on Jews. So this is an attack where he noticed that they had swastikas on their clothing. I don't know whether you know what swastikas symbolize. But that symbolizes something about attacks on Jews by people with swastikas. And while beating them, they were calling them Jewish bastards. Now that also might give you some clue that it had something to do with anti-Semitism. Well, as I said, Your Honor, I think if you read this record as a whole, it does not compel the finding. Perhaps if the Court were to read the facts solely in the light most favorable to the Petitioner, that's the case. Why do you discount her perception of what the message was being conveyed as testimony of a live witness who saw these people and understood what they were saying? Your Honor, what I'm suggesting is that that's, at least in my view, that's her perception. But that's what a witness normally testifies to, their perception. Your Honor, Judge Reinhart was pointing me to a statement where someone said to him, if you don't like it, leave. And I was pointing out to him that there's a difference between actual words and the total impression conveyed. But in a way, it's a communication, whether it's in expressed words or in an attitude. And I absolutely agree with that, Your Honor. The point I was making is that that one statement, when taken in totality of this case, from somebody who is a Jew, for 20 years works with the government, rises up through the organization, is sent out of, you know, I think it's a bit uncongruous to suggest that the reason why something's happening is that this government is against her. Well, I think one thing you're not taking into account is that she might be treasured by the particular department that she works for, but the people that have the power are the police. And they could and apparently did have a very different attitude. They don't treasure her, they don't see her work, and they appear to have a hostile attitude towards Jews. Well, that's not her claim, Your Honor. What she suggests is that after she complains, this is, again, the heart of her last claim, is that after the people who allegedly treasures her sends her out to be a spokesperson, she speaks outside of the scope of her employment, and these very same people who allegedly treasure her are now the same ones that she says, oh, by the way, they're attacking me because I'm Jewish. That's why I'm being detained and threatened with all these things. And these are the very people that have promoted her for the last 20 years, have said to her, you go out there, you be the spokesman. Again, in many of these cases, I cannot dispute that there's some evidence in the record that supports the Petitioner's point. What I would suggest, though, is that there's ample evidence in this case based on her own testimony, based on the documents that's in this case that supports the IJ's finding. It's not an irrational finding. It's clearly supported by substantial evidence. And these are always tough calls to make. Presumably, in a lot of cases, they go the alien's way. Sometimes, as in this case, it has gone against the Petitioner. But the question for this Court and for Petitioner to overcome is whether the decision is supported by substantial evidence. I would submit to the Court that there's ample evidence in this record to support the findings, and I would ask the Court to affirm. Thank you, Your Honor. Thank you, Justice. I'll leave the Court with just one other comment to make about the credibility resolution. The fact that after the Petitioner makes these comments in the agricultural meeting and after she's been arrested and comes out of jail, she is allowed to go back and resume her job and the fact that these matters aren't taken to the ultimate extreme I don't think makes any difference here. I think this is still a fact that you could have one attitude by the agency that she works for and a different attitude by the police. In any event, the overall fear of persecution is established. I have nothing more to add unless the Court has any questions. I think the Court should reverse this matter and remand to the BIA. Thank you. Thank you, Counsel. Case to be argued will be submitted. Next case for oral argument is
judges: Reinhardt, Noonan, Clifton